**BELCHER OIL COMPANY and Belcher Towing Company, Plaintiffs-Appellants,**

v.

**M/V GARDENIA, her engines, tackle, appurtenances and cargo; in rem, Defendant-Appellee.**

No. 84–5607.

United States Court of Appeals, Eleventh Circuit.

July 29, 1985.

Leanne J. Frank, Corlett, Killian, Hardeman, McIntosh & Levi, P.A., Miami, Fla., and Hinds & Meyer, Dan H. Hinds, Houston, Tex., for plaintiffs-appellants.

Michael T. Moore, Holland & Knight, and George Mencio, Jr., Miami, Fla., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and THOMAS *, District Judge.

DANIEL HOLCOMBE THOMAS, District Judge:

Appellants Belcher Oil Company and Belcher Towing Company (collectively "Belcher") brought an action *in rem* against the M/V GARDENIA pursuant to the Federal Maritime Lien Act, 46 U.S.C. § 971, *et seq.*, to recover for necessaries furnished to the M/V GARDENIA. Specifically, Belcher sought to recover the value of towage and bunkering services provided to the vessel upon the charterer's insolvency. Appellee M/V GARDENIA, through its owner, N.V. Stoomvaart Maatschappij Oostzee (hereinafter the "owner"), defended the action and asserted as affirmative defenses (1) that at all times material to Belcher's claim, Belcher had knowledge that Pan Atlantic Lines, the vessel's timecharterer, and Chester, Blackburn & Roeder ("CB & R"), its agent, lacked the authority to bind the vessel; (2) that at all times material to Belcher's claim, Belcher had knowledge of the prohibition of lien clause contained in the charter party for the M/V GARDENIA; and (3) assuming maritime liens against the vessel were created, Belcher waived those liens by their conduct indicating that they intended to rely exclusively on the credit of the time charterer Pan Atlantic Lines or its agent CB & R.

The action was tried without a jury on July 2, 1984. The owners did not contest that Belcher provided the necessaries. It was stipulated that Belcher had a *prima facie* case and that the M/V GARDENIA would present its defenses to rebut the statutory presumptions enjoyed by Belcher pursuant to 46 U.S.C. § 971, *et seq.* Final Judgment and written Findings of Fact and Conclusions of Law were entered in favor of the M/V GARDENIA on all three defenses. This appeal follows and we affirm.

In January 1983, the M/V GARDENIA was operating out of the Port of Miami, under time charter to Pan Atlantic Lines. CB & R acted as Pan Atlantic Lines' agent in the Port of Miami to handle Pan Atlantic Lines' accounts for the procurement of, and payment for, services and supplies required by its chartered vessel. During the time the M/V GARDENIA was operating in the Port of Miami, Belcher provided towage and bunkering services to the vessel.

Under the terms of the charter party Pan Atlantic Lines, as charterers, were responsible for the various port costs of the M/V GARDENIA. The charter party also contained a "prohibition of lien" clause which prohibited the charterer from incurring any maritime liens against the vessel and/or her owners for supplies or necessaries.

The facts, as found by the district court, are paraphrased below.

At all material times Pan Atlantic Lines was the time charterer of the M/V GARDENIA and CB & R was the agent for

---

* Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

Pan Atlantic Lines. Belcher had a long-standing business relationship with both CB & R and Pan Atlantic Lines and was familiar with the intricacies of the operation of CB & R and Pan Atlantic Lines.

Upon the orders of Pan Atlantic Lines' agent, CB & R, Belcher provided fuel bunkers to the M/V GARDENIA on May 25, 1983, and towing services on March 5 and June 5, 1983. Prior to the time these "necessaries" were furnished, Belcher had knowledge that CB & R was an agent for Pan Atlantic Lines and that CB & R had no authority other than to act on behalf of Pan Atlantic Lines.

Belcher was advised by the manager of CB & R's Accounts Payable Department, prior to delivery of the services at issue, that Pan Atlantic Lines was the time charterer of the M/V GARDENIA and that the charter party prohibited Belcher from looking to the vessel and/or her owners for payment of these services. Therefore, Belcher knew that CB & R and Pan Atlantic Lines had no authority to bind the vessel or its owners and could only look to Pan Atlantic Lines for payment.

Belcher was further advised by the manager of CB & R's Accounts Payable Department that there was, in fact, a prohibition of lien clause contained in the charter party. Therefore, Belcher knew or certainly should have known that the charter party contained such a clause. The court further found that Belcher had actual knowledge of the prohibition of lien clause. The court's conclusion that Belcher had actual knowledge of the prohibition of lien clause was found to be corroborated by the fact that several of Belcher's previous bunkering certificates for the M/V GARDENIA, while time-chartered to Pan Atlantic Lines, contained the disclaimer language "for and/or in behalf of time-charterers without recourse to myself and/or Owners of the Vessel."

On May 25, 1983, a dispute arose on board the M/V GARDENIA among representatives of CB & R, Belcher and the officers of the vessel with respect to the execution of Belcher's bunkering certificates for the fuel bunkers delivered by Belcher on that day. The Master of the vessel informed CB & R's fuel coordinator that he would not sign the bunkering certificate without a disclaimer stamp. The district court found that, at this time, Belcher was again informed that the charter party contained a prohibition of lien clause which prohibited the vessel from being liened. Belcher subsequently consented to accepting the signature of CB & R's representative after being informed of the provisions of the charter party agreement.

The court further found, assuming *arguendo* that a lien had been created, Belcher waived any such lien by failing to withdraw the bunkers. Instead, Belcher elected to accept the signature of CB & R's representative in order to facilitate the sale of the bunkers, thereby waiving any lien it may have had against the vessel.

## THE DISPOSITIVE ISSUE

On appeal, Belcher enumerates six assignments of error. However, we need only address the question of whether actual knowledge of a prohibition of lien clause contained in a charter party is the only manner in which a vessel and/or her owners can establish a charterer's lack of authority to bind the vessel so as to defeat a maritime lien afforded the supplier pursuant to 46 U.S.C. § 971, *et seq.*

## THE FEDERAL MARITIME LIEN ACT

Section 971 of the Federal Maritime Lien Act provides:

Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, *upon the order of the owner* of such vessel, *or of a person authorized by the owner,* shall have a maritime lien on the vessel, which may be enforced by suit *in rem,* and it shall not be necessary to allege or prove that the credit was given to the vessel. 46 U.S.C. § 971. (emphasis added).

Section 972 of the Act provides:

The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel. 46 U.S.C. § 972.

Section 973 of the Act was amended in 1971. Prior to 1971, this section provided:

The officers and agents of a vessel specified in section 972 of this title shall be taken to include such officers and agents when appointed by a charterer, by an owner *pro hac vice*, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel. 46 U.S.C. § 973 (pre-1971).

The duty of inquiry imposed by 46 U.S.C. § 973, prior to 1971, eventually became a substantial obstacle for those persons furnishing supplies and other necessaries to maritime vessels. In virtually every instance the supplier was under a duty to ascertain the authority of the individual ordering supplies for a ship to incur liens on the vessel. *See United States v. Carver*, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923); *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940). Such a duty of inquiry became quite impractical in light of the various chartering and sub-chartering practices of foreign and domestic vessels. Furthermore, vessel owners and charterers engaged in sub-chartering activities began to insert "prohibition of lien" or "no lien" provisions in charter parties. This practice effectively shifted the risk of loss to the supplier since a reasonably diligent inquiry would almost certainly yield information which would effectively bar any lien.

In response to this problem, Congress amended 46 U.S.C. § 973 in 1971[1] by deleting the language imposing a duty of inquiry on the materialman. The 1971 amendment to the Federal Maritime Lien Act, 46 U.S.C. § 973, deleted the words "but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of the charter party ... the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel."[2]

The primary concern of the legislators supporting the 1971 amendment was that suppliers were frequently unable to either ascertain the existence of a charter and determine if the charter party contained a prohibition of lien clause or to perform an adequate check on the entity ordering the supplies. *See* H.R. 92–340, 92 Cong., 1st Sess., reprinted in 1971 U.S.Code Cong. & Ad.News 1363; 177 Cong.Rec. 25,762 (1971); *Id.* at 25,763; *Id.* at 25,764.

## KNOWLEDGE OF LACK OF AUTHORITY VS. KNOWLEDGE OF PROHIBITION OF LIEN CLAUSE

As noted above, the district court held, *inter alia*, that the presumption of a lien will be defeated if the vessel and/or her owners establish either that the supplier

---

1. 46 U.S.C. § 973 now provides:

   The officers and agents of a vessel specified in Section 972 of this title shall be taken to include such officers and agents when appointed by a charterer, by an owner, *pro hac vice*, or by an agreed purchaser in possession of the vessel.

2. Due to the nature of the shipping business, materialmen furnishing supplies and other necessaries to a vessel rarely have sufficient time in which to ascertain whether a vessel is under charter or to review complicated charter provisions prior to entering into contracts for the furnishing of necessaries to a vessel which may be in port for only a brief period.

had actual knowledge that the person ordering the supplies or other necessaries lacked the authority to bind the vessel, or that the supplier had actual knowledge of a prohibition of lien clause in the charter party.

Belcher maintains that these two findings are inconsistent with the decided cases and defeat the intent of the 1971 amendment. Belcher contends that nothing short of *actual knowledge of a prohibition lien clause* will defeat the lien afforded under 46 U.S.C. § 971. (emphasis added). We disagree.

■ Section 971 of the Federal Maritime Lien Act clearly states that a maritime lien will arise in favor of one furnishing necessaries to a vessel when those necessaries are ordered by the owner or a *person authorized by the owner* to bind the vessel. (emphasis added) Section 972 of the Act provides that a charterer is *presumed* to have authority to bind the vessel. (emphasis added) The statute is clear that a lien will not arise when necessaries are ordered by one without authority to bind the vessel. Although a charterer is presumed to have authority to bind the vessel, the lien does not vest absolutely as a matter of law, but rather, "the burden is upon the owner to show that the supplier of necessaries had actual knowledge of the existence of any lack of authority relied upon as a defense." *Jan C. Uiterwyk Co., Inc. v. M/V MARE ARABICO*, 459 F.Supp. 1325, 1331 (D.Md. 1978). This was made even clearer in the case of *Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER*, 724 F.2d 1161 (5th Cir.1984) in which it is stated, "This lien [46 U.S.C. § 971] attaches when necessaries are ordered by and supplied to the charterer, unless the supplier has notice that the person who orders the necessaries lacked authority to do so." [3]

Gilmore & Black, in the 2nd Edition of *The Law of Admiralty* at page 685, give a very interesting discussion on the effect of the 1971 amendment to § 973. Among other things, Gilmore & Black state, "If the person who orders the services is not authorized by the owner to create liens and if the furnisher of the services has notice of the lack of authority, it is entirely clear that no lien will arise."

■ Belcher's emphasis upon the supplier obtaining actual knowledge of prohibition of lien clauses is misplaced. If a supplier has actual knowledge of prohibition of lien clause in a charter party then he certainly has actual knowledge of the charterer's lack of authority to bind the vessel. Actual knowledge of a prohibition of lien clause is merely one way of obtaining actual knowledge of one's lack of authority to bind the vessel.

The cases relied upon by Belcher do not support such a requirement. *TTT Stevedores of Texas, Inc. v. M/V JAGAT VIJETA*, 696 F.2d 1135 (5th Cir.1983); *Gulf Oil Trading Co. v. M/V CARIBE MAR*, 757 F.2d 743 (5th Cir.1985); *Jan C. Uiterwyk Co., Inc. v. M/V MARE ARABICO, supra; Lake Union Drydock Co. v. M/V POLAR VIKING*, 446 F.Supp. 1286 (W.D.Wash. 1978).

Belcher relies primarily upon *TTT Stevedores of Texas, Inc. v. M/V JAGAT VIJETA, supra*. In that case the Fifth Circuit Court of Appeals recognized that actual knowledge of a prohibition of lien clause would bar the lien. 696 F.2d at 1138. It must be noted, however, that the court did not hold that actual knowledge of a prohibition of lien clause is the only manner in which it can be established that the charterer lacked authority to bind the vessel. The court in *TTT Stevedores of Texas, Inc. v. M/V JAGAT VIJETA, supra*, merely held that a lien would be barred if the supplier had actual knowledge of a prohibition of lien clause in a charter party prior to furnishing necessaries to the vessel.

A careful reading of the cases cited by Belcher on this issue reveals that in no case were the suppliers presented with the ques-

---

**3.** While Belcher Co. of Ala. does not have the identical name of the plaintiff in this case, there must be some relationship between the two be-

cause in both cases, Belcher was represented by the same attorney of Houston, Texas.

tion as to the authority of the one ordering the supplies. In each of those cases the supplies were ordered either by one having authority, or presumed authority (§ 972) which was never questioned. Thus, the courts in each of those cases did not address the issue herein.

We therefore hold that a maritime lien, created pursuant to 46 U.S.C. § 971, may be defeated when the vessel and/or her owners establish that the supplier of necessaries either had actual knowledge that the person ordering the supplies lacked the authority to bind the vessel or had knowledge of a prohibition of lien clause in the charter.

Our holding is not, in any way, to be construed so as to either limit the supplier's ability to rely on the presumptions afforded him or to impose a duty of inquiry. However, a supplier should not be allowed to rely on such beneficial presumptions when he has actual knowledge to the contrary. Suppliers of necessaries are afforded the protection of a lien when they have no knowledge of a prohibition of lien clause and no knowledge that the person ordering the supplies has no authority to do so. These concerns are, of course, moot when a supplier has actual knowledge of the buyer's lack of authority to bind the vessel—be it by knowledge of a prohibition of lien clause or otherwise. The supplier who has such knowledge is then in a position to make an informed business decision and may refuse to supply the vessel, make other arrangements for payment, or assume the risk.

In the instant case, the record clearly supports a finding that Belcher had sufficient knowledge that Pan Atlantic Lines and CB & R lacked the authority to bind the vessel. In any event, were we to accept Belcher's contention that only actual knowledge of the prohibition of lien clause would defeat the lien, we find that the record sufficiently supports the district court's finding that Belcher had actual knowledge of the prohibition of lien clause contained in Pan Atlantic Lines charter agreement.

In light of our disposition of the above issue we do not reach Belcher's remaining contentions. Based on the foregoing, WE AFFIRM.