878 F.2d 381
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re H & S TRANSPORTATION COMPANY, INC., Debtor.
C. Bennett HARRISON, Jr., Trustee, Plaintiff-Appellee,
v.
BRENT TOWING CO., INC., Defendant-Appellant,
C. Bennett HARRISON, Jr., Trustee, Plaintiff-Appellee,
v.
UNITED LIBERTY LIFE INSURANCE CO., Defendant-Appellant.
 No. 88-6168.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1989.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and ANN ALDRICH, District Judge.*
 PER CURIAM.
 
 
 1
 This action was brought by the trustee in bankruptcy of H & S Transportation Company to recover alleged preferences said to have been created when H & S paid certain fuel bills within 90 days of filing its bankruptcy petition.
 
 
 2
 Defendants Brent Towing Company and United Liberty Life Insurance Company owned towboats that were operated by H & S pursuant to charter agreements. The bankruptcy court ruled that when H & S bought fuel on credit, the fuel vendors automatically acquired statutory maritime liens against the vessels under 46 U.S.C. Sec. 971; that the creation of these liens gave rise to contingent indemnity claims against H & S on the part of United and Brent; and that H & S's subsequent payments to the fuel vendors benefitted United and Brent by extinguishing the liens on the vessels. Concluding that the payments were preferences as defined in 11 U.S.C. Sec. 547(b), the bankruptcy court entered judgment in favor of the trustee.
 
 
 3
 The district court reversed the judgment of the bankruptcy court on appeal, holding that no maritime lien ever arose against either of the vessels, which meant that the payments were not preferential to the defendants. We believe the district court misconstrued the applicable maritime law, and that statutory liens did in fact exist. We shall therefore reverse the district court's judgment and remand the case for consideration of other issues raised by Brent and United below.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 At all times relevant to this action United owned the towboat Volunteer State, and Brent owned the towboat Margaret Brent. United chartered the Volunteer State to Inland Transportation Company, and Brent chartered the Margaret Brent to River Line, Inc. Inland and River Line, companies controlled by one James W. Armstrong, arranged with H & S, a third Armstrong company, to operate the vessels. H & S was paid monthly, in advance, for operating the vessels, and H & S billed Inland and River Line for operating expenses as they came due. In the course of operating the towboats H & S would routinely obtain fuel supplies on credit; the cost of the fuel would be included among the operating expenses for which Inland and River Line were billed.
 
 
 7
 H & S filed a petition in bankruptcy under Chapter 11 on September 4, 1981. During the preceding 90 days, H & S had paid in excess of $149,000 to various fuel vendors that had supplied fuel on credit for the Volunteer State. During that same period H & S had paid in excess of $26,000 to various vendors for fuel purchased on credit for the Margaret Brent. The trustee in bankruptcy sued the fuel suppliers, alleging that these payments were preferences voidable under 11 U.S.C. Sec. 547(b). The trustee lost those suits because the bankruptcy court ruled that the fuel vendors were entitled to the "subsequent new value" defense set forth in Sec. 547(c)(4), the vendors having supplied additional fuel on credit after the preferential transfers occurred. See In re H & S Transp. Co., 45 Bankr. 233, 237-39 (Bankr.M.D.Tenn.1984).
 
 
 8
 On October 14, 1983, the trustee commenced the present adversary proceedings against United and Brent, alleging that the payments by H & S during the preference period had extinguished maritime liens on the vessels, thereby benefitting the vessels' owners. After trial, the bankruptcy court found that the trustee had established the elements of a preferential transfer and that United and Brent had failed to make out any defense. The court entered judgment against United in the amount of $149,586.98 and against Brent in the amount of $26,250.73, amending the judgment later to include an award of prejudgment interest. The final judgment against United was for a total amount of $199,526.81 and against Brent for a total amount of $35,013.61. United and Brent timely filed notices of appeal to the district court.
 
 
 9
 The defendants raised a number of issues before the district court, but that court reached only one; it reversed the judgment of the bankruptcy court solely on the ground that the fuel vendors had not acquired maritime liens because the towboats' charter agreements contained provisions prohibiting the charterers, Inland and River Line, from allowing liens to arise against the vessels. The court held that the case was controlled by the presumption that every person has performed a duty enjoined by law or contract, unless the contrary appears. The trustee filed a timely notice of appeal to this court.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 According to 46 U.S.C. Sec. 971,
 
 
 13
 "[a]ny person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem and it shall not be necessary to allege or prove that credit was given to the vessel."
 
 Section 972 provides that
 
 14
 "[t]he following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted."
 
 
 15
 Prior to 1971, this presumption was effectively restricted by Sec. 973, which provided that
 
 
 16
 "[t]he officers and agents of a vessel specified in section 972 shall be taken to include such owners and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this section shall be construed to confer a lien when the furnisher knew, or by existence of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries, was without authority to bind the vessel therefor." (Emphasis supplied.)
 
 
 17
 As a result of the emphasized language in the foregoing quotation, "the supplier [was] charged with knowledge of the provisions of the charter when he either [knew] them or by reasonable diligence could [have] ascertaine[d] them." Dampskibsselskabet Danneborg v. Signal Oil & Gas Co., 310 U.S. 268, 273-74 (1940).
 
 
 18
 In 1971, Congress amended Sec. 973 by striking out the proviso. The legislative history suggests that Congress revised the law "to permit a supplier to acquire ... a [maritime] lien despite a 'prohibition of lien' clause in the charter party." H.Rep. No. 340, 92d Cong., 1st Sess. 1-3, reprinted in U.S. Code Cong. & Admin. News 1363, 1363. In the view of the lawmakers, "[t]he practical effect of the bill [wa]s to negate the operation of a 'no lien provision' in a charter" of which a supplier had no actual knowledge. Id. at 1365. Then Deputy Attorney General Richard Kleindienst expressed the Justice Department's view that "[t]he bill would provide an easy, automatic and far-reaching lien for the materialman even if the ship owner had previously by contract prohibited his charterer from incurring any liens." Id. at 1368.
 
 
 19
 The revised statute has been construed in harmony with this history. It has been held that a supplier of necessaries acquires a maritime lien against the vessel unless he has actual knowledge of the operator's lack of authority to bind the vessel. Belcher Oil Co. v. M/V Gardenia, 766 F.2d 1508, 1513 (11th Cir.1985).
 
 
 20
 In our opinion, the 1971 change in the statute negates the presumption relied upon by the district court. Section 971 provides that "[a]ny person furnishing ... necessaries, to any vessel ... upon the order of ... a person authorized by the owner, shall have a maritime lien on the vessel...." (Emphasis supplied.) Section 972 provides that "any person to whom the management of the vessel at the port of supply is intrusted shall be presumed to have authority from the owner to procure necessaries for the vessel." Brent and United did not rebut this statutory presumption. There is no evidence that H & S took any action to ensure that liens would not attach to the chartered towboats. There is no evidence that any fuel supplier knew of the no-lien provisions in the charter agreements. And there is no evidence that any fuel vendor knew that H & S had no authority to allow liens to arise against the towboats. Under these circumstances, the bankruptcy court correctly found that maritime liens had arisen.
 
 
 21
 Brent and United presented a number of other arguments why the bankruptcy court's decision ought to have been reversed, but those arguments were not addressed by the district court. They can be dealt with on remand. The judgment of the district court is REVERSED, and the case is REMANDED for additional proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation