**TRITON CONTAINER INTERNA-TIONAL LIMITED, a corpo-ration, Plaintiff,**

**v.**

**M/S ITAPAGE, her engines, tackle, furniture, apparel, etc., in rem; Companhia De Navegacao Lloyd Brasileiro, in personam, Defendants.**

**No. 90–1082–Civ–J–16.**

United States District Court, M.D. Florida, Jacksonville Divison.

Dec. 21, 1990.

Gary A. Bubb, Toole, Bubb & Beale, P.A., Jacksonville, Fla., for plaintiff.

James J. Taylor, Jr. and Timothy J. Conner, Gabel, Taylor & Dees, Jacksonville, Fla., for defendants.

ORDER

JOHN H. MOORE, II, District Judge.

This cause is before the Court upon Defendants M/S ITAPAGE and COMPANHIA DE NAVEGACAO LLOYD BRASILEIRO's motion to vacate wrongful arrest and wrongful attachment, filed herein on December 12, 1990. Plaintiff TRITON CONTAINER INTERNATIONAL LIMITED opposed Defendants' motion in its memoranda, filed herein on December 19, 1990. The Court heard oral argument from both parties at an expedited hearing held on December 20, 1990. For the reasons set forth below, the Court finds that Defendants' motion must be denied.

On November 30, 1990, Plaintiff Triton filed its Complaint *in rem* and *in personam* against Defendants alleging that Defendant Lloyd Brasileiro failed to make payments due under a master lease agreement with Triton. On the same date, the Honorable Harvey E. Schlesinger issued an order directing the issuance of a warrant of arrest for the vessel ITAPAGE which was subsequently arrested when she called on the Port of Jacksonville, Florida. On December 3, 1990, the Honorable Howard T. Snyder executed an order directing the issuance of process of attachment and garnishment. In its motion, Brasileiro alleges that Triton has wrongfully procured process of arrest and attachment against the ITAPAGE.

■ Brasileiro attacks the validity of the arrest on three grounds. Initially, Brasileiro contends that the Federal Maritime Lien Act (FMLA), 46 U.S.C. §§ 30101–31343, does not provide for a maritime lien in favor of Triton. Section 31342 of the FMLA establishes the right to a maritime lien for persons providing necessaries to a vessel on the order of the owner or a person authorized by the owner to procure necessaries for a vessel. Pursuant to subsection (b) of that section, "public vessels" are specifically excluded from the creation of a maritime lien. The term "public vessel" is defined in Section 30101(3) as a vessel that is owned, demise chartered, or operated by the United States Government or a government of a foreign country. Since the Defendant vessel does not fall within this definition, Brasileiro argues that the legislative history of the statute indicates that a broader definition contained in the Foreign Sovereign Immunities Act should apply. However, the Court is unpersuaded by this interpretation of the statute. In recodifying the existing law on maritime liens, Congress had the opportunity to define "public vessel" in a manner which covered a vessel such as the ITAPAGE, but chose not to do so. The Court will not broaden the definitional language contained in this recently enacted legislation.

■ Next, Brasileiro asserts that the arrest was wrongful because there are no allegations that Triton provided containers to the ITAPAGE. Defendants rely upon *Foss Launch & Tug Co. v. Char Ching Shipping, U.S.A.*, 808 F.2d 697 (9th Cir. 1987), a case which held that when cargo containers are leased in bulk to a fleet of vessels, a maritime lien does not arise unless it is shown that the containers were earmarked for a specific vessel. Contrary to Brasileiro's position, the Court does not believe that it is bound by *Foss Launch* inasmuch as the contract provision that provides for California law to be controlling does not apply in this situation which falls under federal maritime law. Upon reviewing the existing caselaw on this subject, the Court declines to follow *Foss Launch*, and finds that, for purposes of creating a valid maritime lien, it is not necessary that a container be identified with a particular vessel. *See Itel Containers International Corp. v. Atlanttrafik Express Service*, 668 F.Supp. 225, 231–32 (S.D.N.Y.1987); *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 600–01, 603 (5th Cir.) (en banc), *cert. denied* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986);

*Transamerica ICS, Inc. v. M/V Panatlantic,* 1984 A.M.C. 489, 490 (S.D.Fla.1983).

Finally, Brasileiro contends that it is entitled to immunity under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602, *et seq.* The Plaintiff does not dispute that Brasileiro falls within the definition of FSIA; however, they contend that Brasileiro waived its rights to sovereign immunity in the master lease agreement. Section 6(b) of the "Business Conditions" portion of that agreement provides as follows:

> Lessee [Lloyd Brasileiro] waives any and all rights it may have under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. Section 1602, *et. seq.,* including, without limitation, any immunity Lessee may have from prejudgment seizure, arrest or attachment.

 Brasileiro argues that this waiver is void for two reasons. First, Brasileiro asserts that this clause appears inconspicuously in the back of the agreement, and, therefore, should be unenforceable. After reviewing the applicable contract, and in view of the parties' relative sophistication in executing these types of contracts, the Court finds that this argument is without merit. Brasileiro also contends that the waiver is ineffective because, under Brazilian law, Brasileiro's representatives did not have authority to waive sovereign immunity. The Court is unpersuaded by this argument as well. In *Atwood Turnkey Drilling v. Petroleo Brasileiro,* 875 F.2d 1174 (5th Cir.1989), a case involving pre-judgment attachment, the Fifth Circuit held that a Brazilian corporation entitled to sovereign immunity had waived its right to immunity through a contractual provision. Since the facts presented here closely resemble the situation in *Atwood,* the Court finds the Fifth Circuit's analysis to be highly persuasive.[1] Moreover, it would be inequitable to permit representatives of a foreign corporation, such as Brasileiro, to obtain whatever benefits accrue from a binding contract, but then allow them to invoke the shield of sovereign immunity when economic fortunes take a turn for the worse. Therefore, the Court finds that Brasileiro is not entitled to the protections of sovereign immunity.

 Brasileiro also contends that the attachment of the ITAPAGE was wrongful. The precise issue here is whether Brasileiro can be "found within the District" as contemplated in Supplemental Admiralty Rule B and Local Admiralty Rule 7.02(a). Brasileiro argues that it can be found within the district because the master of the ITAPAGE is within the district now and amenable to service of process. However, the Court finds that this is not the type of ongoing presence within the District which was intended under the Rules.

In sum, the Court finds that the arrest and attachment were not wrongful and that Defendants' motion to vacate must be denied. Accordingly, it is now

ORDERED AND ADJUDGED:

That Defendants M/S ITAPAGE and COMPANHIA DE NAVEGACAO LLOYD BRASILEIRO's motion to vacate wrongful arrest and wrongful attachment, filed herein on December 12, 1990 be and the same is hereby DENIED.

DONE AND ORDERED.

---

**1.** The fact that this case involves both arrest and attachment does not distinguish it from *Atwood.*