**KALEIDOSCOPE TOURS, a Florida Corporation, Plaintiff,**

v.

**The M/V "TROPICANA," her engines, tackle, apparel, etc., in rem, and Guinness Mahon & Co. Limited, Claimant as former mortgagee in possession (owner) of the M/V Tropicana, Defendants.**

No. 90–6315–CIV.

United States District Court, S.D. Florida.

Dec. 21, 1990.

James W. Stroup, Daniel D. Douglass, Fort Lauderdale, Fla., for plaintiff.

Robert Lamar Bell, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RYSKAMP, District Judge.

THIS MATTER came before the court for trial on September 19, 1990. Having considered the testimony and other evidence presented, the court enters its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## A. BACKGROUND

Plaintiff Kaleidoscope Tours ("Kaleidoscope") brought this action *in rem* to recover for embarkation services provided to the M/V "TROPICANA" from March 27, 1989 to May 14, 1989. Kaleidoscope claims a maritime lien against the M/V "TROPICANA" which it seeks to enforce for payment of said embarkation services. The central dispute in this case is whether or not the services rendered by the plaintiff constitute "necessaries," which give rise to a maritime lien under the Federal Maritime Lien Act ("FMLA"), 46 U.S.C.A. §§ 31341–31343 (1990).

## B. FINDINGS OF FACT

1. Kaleidoscope performed embarkation services at the Port of Miami for the M/V "TROPICANA" from December 1, 1988 to May 14, 1989. These embarkation services included the following:

a) the collection of money from passengers;

b) the collection of passengers' tickets;

c) having passengers sign for their passage tickets;

d) checking passengers' passports or other proof of United States citizenship for immigration purposes;

e) embarking temporary crew members or ship's employees without identification badges;

f) accounting for and delivering all passenger fares collected to pier supervisors employed by Sea Venture Cruises, Inc., the charterer's agent.

2. These embarkation services were performed pursuant to an agreement between Kaleidoscope and Sea Venture Cruises, Inc. and/or its agent, Tropicana Cruises, Ltd.

3. All invoices submitted by Kaleidoscope for embarkation services performed prior to March 27, 1989 were paid.

4. Kaleidoscope submitted invoices in a total amount of twenty thousand three hundred fifty dollars ($20,350.00) for embarkation services performed from March 27, 1989 to May 14, 1989. These invoices have not been paid.

## C. CONCLUSIONS OF LAW

The FMLA provides that:

a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—

(1) has a maritime lien on the vessel;

(2) may bring a civil action in rem to enforce the lien; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C.A. § 31342(a) (1990).

■■■ The embarkation services at issue were apparently performed on the order of an agent of Sea Venture Maritime, S.A., the charterer of the M/V "TROPICANA," who is statutorily presumed to have authority to procure necessaries for the vessel, 46 U.S.C.A. § 31341(a)(4)(B). At the very least, the embarkation services were performed on the order of a person who had apparent authority to do so, which is sufficient to give rise to a maritime lien. *S.E.L. Maduro, Inc. v. M/V Antonio de Gastaneta*, 833 F.2d 1477, 1482 (11th Cir. 1987). Therefore, the defendants' argument that the embarkation services were performed on the order of a person who lacked actual authority to procure necessaries is of no avail, absent any showing that the plaintiff had actual knowledge of any such lack of authority. *Belcher Oil Co. v. M/V Gardenia*, 766 F.2d 1508, 1512 (11th Cir.1985).

■■■ The decisive question in this case is whether the embarkation services performed by Kaleidoscope constitute "necessaries" under the FMLA. For practical purposes, this question coincides with the question of whether the contract under which Kaleidoscope provided the embarkation services was "maritime in nature." *E.S. Binnings, Inc. v. M/V Saudi Riyadh*, 815 F.2d 660, 666 (11th Cir.1987) (citing 7A J. Moore, *Moore's Federal Practice* ¶ C.05, at 623 (2d Ed.1985)). If these questions are answered in the affirmative, then the plaintiff has a maritime lien which the court must enforce. If, however, the embarkation services performed by Kaleidoscope

are not "necessaries," then the contract under which the services were performed is "merely preliminary to maritime activity," *id.* at 664. In that event, the contract does not give rise to a maritime lien, the court has no admiralty jurisdiction under the FMLA, and this case must be dismissed. *See id.* at 665–67.

■■■ As observed by the Supreme Court in *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), "[t]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." 365 U.S. at 735, 81 S.Ct. at 890. The basic definition of maritime contracts applied in the Eleventh Circuit is "contracts [which] pertain directly to and [are] necessary for commerce or navigation upon navigable waters." *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990) (quoting 7A J. Moore, *Moore's Federal Practice* ¶ .230[2], at 2761 (2d Ed.1988)). *See also* 1 S. Friedell, *Benedict on Admiralty* § 182 (1988) ("In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry. . . .") (footnote omitted). By contrast, contracts for services that are preliminary to maritime contracts, but are not themselves "maritime in nature," are excluded from admiralty jurisdiction. *E.S. Binnings*, 815 F.2d at 663; *See also* 1 *Benedict on Admiralty, supra,* at § 183.

"Deciding whether contracts come within federal maritime jurisdiction, however, is not subject to exactitude. Precedent and usage are helpful with regard to more common types of contracts, while less common situations must be considered on a case-by-case basis." *Nehring*, 901 F.2d at 1048 (citations omitted). In this instance, a review of the case law on maritime contracts

and liens reveals no precedent whatsoever relating to embarkation services, and no relevant cases dealing with passenger ships. The court therefore must rely on analogies to case law regarding cargo ships, which constitutes the lion's share of reported decisions.

A portion of the well reasoned opinion of the Second Circuit in *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 301–03 (2d Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988), recently cited with approval by the Eleventh Circuit in *Nehring*, 901 F.2d at 1049–50, is especially pertinent to the case at hand. The relevant portion of the *Ingersoll Milling* case involved a claim by a shipper against a freight forwarder for damages to goods which had been improperly stored on the ship. The freight forwarder challenged the district court's assertion of admiralty jurisdiction on the ground that the services it performed, including "[t]he preparation and processing of export declarations, delivery orders, dock receipts, bills of lading, and advance notification of shipment," 829 F.2d at 302, fell within the ambit of general agency contracts, which have long been excluded from admiralty jurisdiction under *Minturn v. Maynard*, 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1854).

■■ Having noted the recent reaffirmance of the rule in *Minturn v. Maynard* by the Second Circuit in *Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp.*, 739 F.2d 798, 802–04 (2d Cir.1984),[1] *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1405, 84 L.Ed.2d 791 (1985), the court in *Ingersoll Milling* rightly observed that whether or not a particular agreement is determined to be a maritime contract should depend "not on the name assigned to the contract, but rather on the nature of the services to be performed." 829 F.2d at 302. Analyzing the nature of the particular services

---

1. The basic rationale articulated in *Peralta* for excluding agency contracts from admiralty jurisdiction is that such agreements are preliminary to maritime contracts, and that preliminary agreements have not been cognizable in admiralty "from the earliest days." 739 F.2d at

801. *See The Thames*, 10 F. 848 (S.D.N.Y.1881). The essential holding in *Peralta*, including the reaffirmance of the rule in *Minturn v. Maynard*, was adopted by the Eleventh Circuit in *E.S. Binnings*, 815 F.2d at 662–63.

performed by the freight forwarder in *Ingersoll Milling,* the court concluded that "[t]he preparation and processing of export declarations, delivery orders, dock receipts, bills of lading, and advance notification of shipment are not services rendered preliminary to a voyage rather they are essential to it. Without these, there can be no voyage." *Id.* The court proceeded to hold that a contract to perform these freight forwarding services "falls squarely within the admiralty jurisdiction of the federal courts." *Id.* at 303.

Although the case at hand concerns passenger shipping rather than cargo shipping, the embarkation services performed by Kaleidoscope are analogous to the services performed by the freight forwarder in *Ingersoll Mining.* In particular, the collection of and accounting for passengers' fares and tickets and the checking of passports for immigration services are essential to the voyage of a cruise ship. "Without these, there can be no voyage." *Id.* at 302. This court therefore concludes that the embarkation services performed by Kaleidoscope are "necessaries" which give rise to a maritime lien under the FMLA. Thus, the contract pursuant to which these services were performed is a maritime contract, and the court has jurisdiction to enforce the maritime lien.

## D. CONCLUSION

Judgment in accordance with the above findings of fact and conclusions of law will be entered by separate order pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DONE and ORDERED.