**REDCLIFFE AMERICAS
LIMITED, Plaintiff,**

v.

**M/V TYSON LYKES (ex-M/V Delaware Bay) and M/V Tillie Lykes (ex-M/V Chesapeake Bay), their tackle, apparel, etc., in rem, Defendants.**

**Civ. A. No. 2:91–1091–18.**

United States District Court,
D. South Carolina,
Charleston Division.
In Admiralty.

Nov. 3, 1992.

Marvin Infinger, Charleston, S.C., for plaintiff.

Gordon Schreck, Charleston, S.C., Christopher Dillon, New York City, for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court on plaintiff's motion for partial summary judgment.

## I. BACKGROUND

Redcliffe Americas Limited (hereinafter "Redcliffe") leased approximately 245 refrigerated containers to Topgallant Group Inc. (hereinafter "Topgallant Group") under a three-year "Equipment Rental Agreement" [1] dated April 22, 1988 (as amended). Topgallant Group was an intermodal shipping company that transported containerized goods by ship, truck and rail between locations in the United States and Europe. It filed for bankruptcy on December 13, 1989, in Savannah, Georgia. Sixteen months later, Redcliffe brought this action seeking to recover unpaid charges [2] under its lease on the theory that it is entitled to claim these sums as maritime liens against the *in rem* defendants, M/V TYSON LYKES (ex M/V DELAWARE BAY) and M/V TILLIE LYKES (ex M/V CHESAPEAKE BAY) (hereinafter the "Defendant Vessels"). This claim is brought pursuant to the Federal Maritime Lien Act, 46 U.S.C.A. § 31342.

First American Bulk Carrier Corporation (hereinafter "FABC") is the demise owner of the Defendant Vessels and appears as claimant on behalf of these vessels. FABC leased the Defendant Vessels to Topgallant Group under bareboat charters dated April 23, 1987.[3]

Redcliffe moves, pursuant to Fed. R.Civ.P. 56, for partial summary judgment in its favor with respect to the per diem rental portion of its claim on the basis that there is no genuine issue of material fact. The ground for this motion is that the breach of Redcliffe's lease of refrigerated cargo containers for use aboard the Defen-

---

**1.** In particular, two provisions of the agreement relate to the present discussion. First, the agreement states that the containers are leased "for use in particular on the Lessor's [sic] vessels 'Chesapeake' and 'Delaware' or such other vessels as agreed between the parties in writing." Second, paragraph 15 of the agreement states: "[t]his agreement shall be construed under the laws of the State of New York as applied by State and/or Federal Law in said State. Both parties agree to jurisdiction over it in said State of New York in such Court or arbitration as may be appropriate to the cause being brought."

**2.** Redcliffe claims to be unpaid for the monthly rental of the containers for the period between September 1, 1989 and December 31, 1989, inclusive, totalling $432,196.00.

**3.** The charters contain a prohibition of lien clause wherein Topgallant Group was only permitted to load onboard the Defendant Vessels containers for which "the container owner/lessor [had] waived any maritime lien on the carrying vessel."

dant Vessels gives rise to a maritime lien in favor of Redcliffe, and thereby entitles Redcliffe to recover unpaid rental fees for the months in which the Defendant Vessels were in possession of the containers, plus repair and replacement costs, plus prejudgment interest.

## II.  SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c).  In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990).  The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).  *Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931 (4th Cir.1991).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–248, 106 S.Ct. at 2510 (emphasis in original). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its

favor.  *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## III.  ANALYSIS

### A.  *Choice of Law Provision*

■  This court is not bound by the choice of law provision cited in the lease agreement between Redcliffe and Topgallant Group.  A choice of law clause may provide a basis for denying a lien. *Sembawang Shipyard, Ltd. v. Charger, Inc.,* 955 F.2d 983 (5th Cir.1992).  A choice of law clause, however, may not operate to the prejudice of a defendant who is not a party to the contract containing the choice of law clause. *Rainbow Line, Inc. v. M/V Tequila,* 480 F.2d 1024, 1026 (2d Cir.1973) ("the rights of third persons cannot be affected by the intent of the parties to the contract").  Since FABC was not a party to the lease agreement, this court is not bound to follow New York law.

### B.  *Lien Prohibition Clause*

■  A purpose of the Federal Maritime Lien Act (hereinafter "Lien Act") is to help suppliers determine who has authority to incur a lien. *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky,* 869 F.2d 473, 478 (9th Cir.1988).  "The [Lien] Act's presumption in favor of granting liens to suppliers 'was enhanced in 1971 when Congress deleted the requirement that materialmen inquire about the existence of any no-lien clauses before furnishing supplies.' " *Id.,* citing *Farwest Steel Corp. v. Barge Sea–Span 241,* 769 F.2d 620, 623 (9th Cir.1985).[4]  Since the 1971 amendments to the Lien Act, courts have uniformly held that a lien prohibition clause is not effective to rebut a statutory presumption of authority to acquire a lien without proof of the supplier's actual knowledge of

---

**4.** Prior to 1971, 46 U.S.C.A.App. § 973 imposed a duty of "reasonable diligence" to inquire and determine whether the person ordering goods or services was without authority to bind the vessel.  Now codified as 46 U.S.C.A. § 31341, this section states:

(a) The following persons are presumed to have authority to procure necessaries for a vessel:

(1) the owner;

(2) the master;

(3) a person entrusted with the management of the vessel at the port of supply; or

(4) an officer or agent appointed by—

(A) the owner;

(B) a charterer;

(C) an owner pro hac vice; or

(D) an agreed buyer in possession of the vessel....

the clause. *Id.* at 479. This court agrees and concludes that the purposes of the Lien Act, in light of the 1971 amendments, would be thwarted if the actual knowledge inquiry was not followed and undertaken. Thus, for purposes of the present motion, the lien prohibition clause contained in the bareboat charter agreement will not, on its face, prohibit the creation of a lien.[5]

### C. *The Federal Maritime Lien Act*

Redcliffe seeks to recover the debts owed to it by Topgallant Group under its lease by alleging that the Lien Act, 46 U.S.C.A. § 31342, grants Redcliffe a maritime lien on the Defendant Vessels. Section 31342 of the Lien Act states:

Establishing maritime liens

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—

(1) has a maritime lien on the vessel;

(2) may bring a civil action in rem to enforce the lien; and

(3) is not required to allege or prove in the action that credit was given to the vessel.

(b) This section does not apply to a public vessel.

46 U.S.C.A. § 31342.

■ Under the Lien Act, a maritime lien is granted to a person upon proof that the person (1) provided "necessaries" (2) to a vessel (3) on the order of the owner of such vessel or a person authorized by the owner. The burden is on Redcliffe to prove all three of these requirements. *Davis v. U.S.*

*Gas Screw Nola Dare,* 125 F.Supp. 677, 678 (E.D.N.C.1954).

#### a. *Necessaries*

■ Necessaries are defined as including repairs, supplies, towage, and the use of a drydock or marine railway. 46 U.S.C.A. § 31301(4). The term has been expanded to encompass any item which is reasonably needed for the venture in which the ship is engaged. *Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.,* 808 F.2d 697 (9th Cir.1987). "Necessaries" include "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function.... What is a 'necessary' is to be determined relative to the requirements of the ship." *Id.* at 699 (citation omitted). Every court which has considered whether containers are necessaries has answered in the affirmative.[6] *Itel Containers International Corp. v. Atlanttrafik Express Service, Ltd.,* 668 F.Supp. 225 (S.D.N.Y.1987), citing *Foss Launch,* 808 F.2d 697; *Nautilus Leasing Services, Inc. v. M/V Cosmos,* 1983 A.M.C. 1483 (S.D.N.Y.1983); *Transamerica Ics, Inc. v. M/V PANATLANTIC,* 1984 A.M.C. 489 (S.D.Fla.1983). This court concurs and concludes that the containers provided to the Defendant Vessels under the present facts were "necessaries" within the meaning of 46 U.S.C.A. § 31342.[7]

#### b. *Provided to a Vessel*

■ The critical issue in this case is whether the requirement that necessaries be provided "to a vessel," can be satisfied by providing containers under a lease, not based on the needs of a specific vessel, but

---

5. No proof has been submitted to this court regarding the supplier's knowledge of the lien prohibition clause, whether actual or otherwise.

6. Indeed, the vessel owner does not challenge that containers may qualify as necessaries. The vessel owner, however, correctly states that to qualify as a maritime lien, the goods must actually be needed by the ship during the period for which a maritime lien is sought. As noted in the analysis in the text, it is the need of the vessel, not the character of the thing supplied, which makes it a necessary. *Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 603 (5th Cir.1986);

*See also Flagship Group, Ltd. v. Peninsula Cruise, Inc.,* 771 F.Supp. 756 (E.D.Va.1991) (citing with approval *Equilease* and holding that unpaid insurance premiums give rise to a federal maritime lien). There is a material issue of fact as to when the Defendant Vessels needed the containers in the present case. Thus, a ruling on the issue of damages cannot properly be made by this court at the present time.

7. Redcliffe's counsel stated in oral argument that the Defendant Vessels were uniquely designed with "slots" for containers.

indiscriminately in bulk.[8] There are currently two distinct views on the subject of whether or not containers leased in bulk meet the statutory "furnishing" requirement.

The Ninth Circuit, in *Foss Launch*, 808 F.2d at 697, over a vigorous dissent, followed a strict "furnishing requirement" and held they do not. The majority in *Foss Launch* reasoned that Congress intended "furnishing" to require advance identification of particular vessels in relation to "necessaries" supplied, and reasoned that the case was parallel to *Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97 (1920). *Id.* at 702. In both *Foss Launch* and *Piedmont* the materialmen provided bulk supplies—coal in *Piedmont*, containers in *Foss Launch*—in circumstances where the final allocation of supplies, to any vessel of the group intended to be supplied, was left to the discretion of the procuring authority. *Id.* In neither case was there any evident attempt to designate any individual vessel to receive any particular component of the supplies. *Id.* The court in *Foss Launch* concluded that cargo containers leased in bulk to a time charterer of a group of vessels for unrestricted use on board the vessels in that group were not furnished to any particular vessel of the group, on which they subsequently happened to be employed, within the meaning of 46 U.S.C.A.App. § 971.[9] *Id.* at 703.

A contrary view is expressed in the Southern District of New York decisions in *Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd.*, 668 F.Supp. 225

(S.D.N.Y.1987) (hereinafter *"Itel I"*) and *Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd.*, 781 F.Supp. 975 (S.D.N.Y.1991) (hereinafter *"Itel II"*). The District Court in *Itel I* found that a maritime lien was appropriate to accommodate and favor the "modern" practices of the container leasing industry and that it was not necessary that the particular container be earmarked for a particular vessel. *Itel I*, 668 F.Supp. at 231.[10] In so holding, the court looked at the realities of container usage and stated:

> The advantage this equipment offers is its transferability. If the equipment had to be earmarked for a particular vessel and (presumably) used only by that vessel, that advantage would be lost. As the court said in *Equilease*, "[t]he [Lien Act] was intended to encourage private investment in the maritime industry. We will not begin now to defeat the purpose of the [Lien] Act by layering technicalities onto its interpretation." *Equilease*, 793 F.2d at 603.

*Id.* at 230.

This court finds the *Itel I* and *Itel II* reasoning to be the more persuasive and adopts the broader view of the "furnishing" requirement as established in *Itel I* and *Itel II*.[11] This court therefore finds that Redcliffe has satisfied the "furnished to" requirement of 46 U.S.C.A. § 31342.

### c. On Order of the Owner or Authorized Person

The final requirement, that items be furnished to a vessel under the

---

**8.** The Equipment Rental Agreement states: "The Lessor agrees to let and the Lessee agrees to take on hire certain Refrigerated Containers for use in particular on the Lessor's [sic] vessels "Chesapeake" and "Delaware" or such other vessels as agreed between the parties in writing."

**9.** 46 U.S.C.A.App. § 971 is now codified as 46 U.S.C.A. § 31342.

**10.** *See also Foss Launch*, 808 F.2d at 698, n. 1 (where the court also recognizes that it is the practice of the container leasing industry to lease in bulk).

**11.** Other district courts have also found necessaries delivered to a vessel in a fleet, even

though not earmarked for a particular vessel, to be considered "furnished to" that vessel within the meaning of 46 U.S.C.A. § 31342 [or its predecessor 46 U.S.C.A.App. § 971]. *See, e.g., Transamerica Ics, Inc. v. M/V PANATLANTIC*, 1984 A.M.C. 489, 490 (S.D.Fla.1983) (Davis, J.) ("as explained by the plaintiffs ... containers are 'necessaries,'" and "for purposes of creating a valid maritime lien, it may not be essential, ... that the container be delivered directly to the vessel, ... or be earmarked for a particular vessel"); *Triton Container Int'l Ltd. v. M/S Itapage*, 774 F.Supp. 1349, 1350 (M.D.Fla.1990) (Moore, J.) ("for purposes of creating a valid maritime lien, it is not necessary that a container be identified with a particular vessel").

direction of an "owner" or "authorized person"[12] can be easily resolved. It is well established that the bareboat time-charterer of a vessel holds sufficient legal authority over the management of the vessel to subject the vessel to maritime liens. *Id.* at 700; *See also Kaleidoscope Tours v. M/V Tropicana,* 755 F.Supp. 382, 383 (S.D.Fla. 1990); 46 U.S.C.A. § 31341(a)(4)(B) (charterer statutorily presumed to have authority to procure necessaries for a vessel). Thus, Topgallant Group, as the bareboat time-charterer of the Defendant Vessels, had authority to subject the vessels to maritime liens.

## IV. CONCLUSION

Based on the above, Redcliffe has satisfied the requirements of 46 U.S.C.A. § 31342 and has established a maritime lien on the Defendant Vessels. Thus, this court finds that summary judgment in favor of the plaintiff on the issue of liability is warranted. This court, however, finds that material issues of fact remain as to the appropriate time period during which the containers were actually "necessaries." Therefore, the proper amount of damages, including per diem rental of the containers, repairs and replacement value, and prejudgment interest, cannot be decided at this time. It is therefore,

ORDERED, that plaintiff's motion for partial summary judgment with respect only to liability be GRANTED.

AND IT IS SO ORDERED.

---

**12.** 46 U.S.C.A. § 31341 lists persons presumed to have authority to procure necessaries. *See su-* *pra* note 4 (text of 46 U.S.C.A. § 31341).